UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL LUTHER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:19-cv-744 (VAB) |
| | : | |
| THOMAS HUNT, et al., | : | |
|     Defendants. | : | |

# INITIAL REVIEW ORDER AND
# RULING ON MOTION FOR EMERGENCY HEARING

Incarcerated at the Brooklyn Correctional Institution, Michael Luther ("Plaintiff") has sued Community Release Unit Director Thomas Hunt ("Director Hunt"), Commissioner of Correction Rollin Cook, and Inmate Classification Director David Maiga (collectively "Defendants") under 42 U.S.C. § 1983, and has alleged that the Defendants have an unconstitutional policy or practice of denying community release to sex offenders. He also seeks an emergency hearing.

For the reasons set forth below, the Court will dismiss Mr. Luther's claims under the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment, and the United Nations Convention on the Rights of the Child; and all of his claims on behalf of an alleged class. Mr. Luther's claims under the Equal Protection Clause of the Fourteenth Amendment will proceed, but this ruling is without prejudice to Defendants filing a motion to dismiss addressing this claim.

Mr. Luther's motion for an emergency hearing will be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Luther, now thirty-two years old, allegedly has been incarcerated since the age of fifteen for "sexually related offenses." Compl. ¶ 8, ECF No. 1 (May 16, 2019).[1]

On January 11, 2006, a judge imposed a total effective sentence of thirty years of incarceration, execution suspended after twenty years and followed by twenty-five years of probation. *State v. Luther*, Nos. A22MCR02122949, A22MCR02122950, A22MCR02122951, A22MCR02122952, AANCR02122556, AANCR04222687, 2008 WL 1734696, at *1 (Conn. Super. Ct. Mar. 25, 2008).[1]

Mr. Luther alleges that "[i]nmates are assigned a number of classification scores corresponding with various . . . risks and needs" and that "a Classification Sex Treatment Needs Score of 2 or greater . . . indicates a history of one or more sexually related offenses." Compl. ¶¶ 14-15.

On April 24, 2019, Mr. Luther allegedly submitted an application to the Department of Correction Community Release Unit for community release. *Id.* ¶ 9, 11; Compl. at 43 (Ex. G, Agreement for Community Release (Apr. 24, 2019)). "Community release" allegedly refers to a number of programs or facilities designed to assist individuals with successfully transitioning back into their communities after incarceration. *See* Compl. at 45-47 (Ex. I, Conn. Dep't of

---

[1] The Court takes judicial notice of Mr. Luther's convictions and sentences from the decision of the Sentence Review Division of the Connecticut Superior Court. *See State v. Luther*, Nos. A22MCR02122949, A22MCR02122950, A22MCR02122951, A22MCR02122952, AANCR02122556, AANCR04222687, 2008 WL 1734696, at *5 (Conn. Super. Ct. Mar. 25, 2008) (affirming Mr. Luther's sentences as "neither inappropriate or disproportionate"). Mr. Luther pleaded guilty to one count of sexual assault in the first degree, one count of sexual assault in the second degree and four counts of risk of injury to a minor in connection with five criminal cases filed in 2002 involving victims ranging from nine to fourteen years old and one criminal case filed in 2004 involving a victim who was fourteen years old. *See id.* at *1-4.

Corr., Community Release Unit (undated); Ex. H, Community Release Outlook (unknown source) (undated)).

Individuals granted community release are released before the end of their sentence to complete their sentence in the community. *See* Compl. at 45-47 (Ex. O, Releases and discharges in 2005 (unknown source) (undated)).

On May 10, 2019, Director Hunt allegedly denied Mr. Luther's application due to the nature and/or circumstances of his criminal offense and/or the impact to the victim or the victim's family. Compl. at 12-13 ¶ 9; Compl. at 44, Ex. H (Community Release Program Cover Sheet (May 10, 2019) (denying Mr. Luther community release)).

On May 16, 2019, Mr. Luther filed this lawsuit, alleging that the Connecticut Department of Correction has an unconstitutional policy or practice of denying community release to individuals incarcerated for sex offenses. Compl. at 11, ¶ 1-6.

On July 15, 2019, Mr. Luther filed a motion for an emergency hearing requesting injunctive relief permitting him to "submit a new Community Release/Halfway house application" soon enough for him to spend time in a halfway house before his term of imprisonment ends in 2020. Mot. for Emerg. Hearing ¶ 3-6, ECF No. 8 (July 15, 2019) ("With the Risk Reduction Earned Credit [Mr. Luther] stands to earn, he will discharge July 2020."); Compl. at 44 (Ex. H, Community Release Program Cover Sheet, Conn. Dep't of Corr. (May 10, 2019) (estimating Mr. Luther's release date as October 20, 2020)).

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), a court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious,

3

or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### III. DISCUSSION

Mr. Luther argues that the Defendants and the Department of Correction have denied virtually every application for community release submitted by a juvenile sex offender in violation of his federal constitutional and human rights as well as the rights of similarly situated juvenile sex offenders. Compl. at 11 ¶ 3. In his view, this decision violates his Fourteenth Amendment right to due process and equal protection of the laws and his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* ¶ 41. He seeks an order allowing

4

meaningful review of the applications for community placement by juvenile sex offenders, including his own. *Id.* ¶ 43.

The Court addresses each of his claims in turn.

### A. Claims on Behalf of Other Inmates

As to his request for class relief, *pro se* litigants do not have standing to sue on behalf of other litigants. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party" (internal quotation marks and citations omitted)); *Hollingsworth v. Perry*, 570 U.S. 693, 707–08 (2013) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties" (internal quotation marks and citation omitted)).

In addition, a litigant in federal court has a right to act as his own counsel under 28 U.S.C. § 1654, but no authority to appear as an attorney for others. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another's behalf in the other's cause."); *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305, 1308 (2d Cir. 1991) (Section 1654 "does not allow for unlicensed laymen to represent anyone else other than themselves." (internal quotation omitted)).

Thus, Mr. Luther only has standing to assert claims on behalf of himself. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential principle [regarding standing] is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties.").

Accordingly, to the extent that Mr. Luther attempts to raise claims on behalf of other inmates, those claims will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**B.     Due Process Claim**

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property." U.S Const. amend. XIV. In determining whether an incarcerated individual has stated a procedural due process claim, a court "first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

"A liberty interest may arise from either of 'two sources—the Due Process Clause itself [or] the laws of the States.'" *Rodriguez v. McLoughlin*, 214 F.3d 328, 337 (2d Cir. 2000) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (internal citation and quotation marks omitted). To establish that state law creates a liberty interest, the incarcerated plaintiff must show that the interest subjects him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (quoting *Sandin*, 515 U.S. at 484). In the context of a due process claim made by someone who is incarcerated, however, "the mere presence of mandatory language does not necessarily mean that a liberty interest has been created." *Id.* at 338 (citing *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)).

Mr. Luther claims that Director Hunt did not provide him with an opportunity to participate in the community release application process in a meaningful way and failed to consider any of the underlying circumstances relating to his particular conviction. Compl. ¶¶ 38,

6

41(C-E). Director Hunt allegedly denied his application solely because he had been convicted of a sexual offense. *Id.* ¶ 9. Furthermore, Mr. Luther allegedly could not appeal Director Hunt's decision. *Id.* ¶ 41(E).

Mr. Luther, however, has not identified any state law-created liberty interest in community release, nor can he establish that he has a liberty interest under the Due Process Clause itself.

A convicted and incarcerated individual has "no constitutional or inherent right to be conditionally released" from incarceration before the end of his or her valid sentence. *See McAllister v. N.Y. State Div. of Parole*, 432 F. App'x 32, 33 (2d Cir. 2011) (quoting *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)). Additionally, "[i]t is well settled that prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs." *Taylor v. Levesque*, 246 F. App'x 772, 774 (2d Cir. 2007) ("Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification; the matter is committed to the discretion of the Commissioner of Corrections."); *see also Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016) (same); *Petitpas v. Martin*, No. 3:17-cv-1912 (JAM), 2018 WL 5016997, at *3 (D. Conn. Oct. 15, 2018) (dismissing a prisoner's due process claim, noting that he "d[id] not, for example, allege facts or state law protections that give rise to any constitutional liberty interest to be free from a higher risk classification on the basis of his conviction for a forcible sex assault crime and his classification as a sex offender"); *Vega v. Rell*, No. 3:09-cv-737 (VLB), 2012 WL 1298678, at *2 (D. Conn. Apr. 16, 2012) (noting that inmates have "no inherent liberty interest in receiving good time credit" and that the Connecticut law that creates Risk Reduction Earned Credits does

7

not create a liberty interest "because the commissioner is not required to make RREC available to all inmates; he has the discretion to make it available"); *Green v. Comm'r*, 184 Conn. App. 76 (2018) (same).

Because Mr. Luther does not have a liberty interest in release to a community or residential placement or in the opportunity to participate in or receive rehabilitative programming, he is not entitled to any particular procedural due process protections—above what is already provided—in connection with his application for community release.

Accordingly, his procedural due process claim under the Fourteenth Amendment will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C. Eighth Amendment Claim

"Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To state a plausible claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, a prisoner is required to meet a two-part test.

To satisfy the objective element, a plaintiff must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise constitute basic human needs or life necessities. *See Walker*, 717 F.3d at 125 (citing *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Rhodes*, 452 U.S. at 347). To satisfy the

8

subjective element, the plaintiff must show that the defendant acted with "more than mere negligence." *Id.* (quoting *Farmer,* 511 U.S. at 835). The plaintiff must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837.

Mr. Luther argues that serving the rest of his sentence in a Department of Correction facility rather than in a residential placement program constitutes cruel and unusual or excessive punishment. Compl. at 22 ¶ F. He further argues that, in prison, he will not have access to "vital transitional stepping stones and resources" that will help him to "reform and succeed" after his release. *Id.* ¶ H.

But Mr. Luther does not allege any facts necessary to state a claim that his continued confinement in a Department of Correction facility has deprived or will deprive him of a life necessity or will otherwise expose him to conditions posing an unreasonable risk of harm to his health or safety. *See Fonck v. Semple*, No. 3:18-cv-1283 (KAD), 2018 WL 4654700, at *5 (D. Conn. Sept. 27, 2018) (denying an incarcerated plaintiff's Eighth Amendment claim because he "fail[ed] to allege that he was deprived of any basic human need," alleging "only the deprivation of a series of opportunities or privileges to which he might otherwise have had access").

Because Mr. Luther has not alleged that the Defendants deprived him of a life necessity or basic human need, such as food, shelter, clothing or medical care, the objective prong of the Eighth Amendment conditions standard has not been met.

Accordingly, he fails to state a facially plausible claim under the Eighth Amendment and the claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. Equal Protection Claim

The Equal Protection Clause protects individuals from invidious discrimination. It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." (internal citation omitted)).

Where a classification is based on the nature of a criminal offense, including a sex offense, courts apply rational basis scrutiny. *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999) ("Because [plaintiff] alleges a classification based on the nature of his offense, his challenge . . . is entitled to only 'rational basis' and not 'strict scrutiny' review." (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991) (applying rational basis test to a classification based on nature of offense))); *see also Duemmel v. Fischer*, 368 F. App'x 180, 182 (2d Cir. 2010) (stating, in a case brought by an incarcerated sex offender: "We have previously held that 'prisoners either in the aggregate or specified by offense are not a suspect class.'" (quoting *Lee*, 87 F.3d at 60)); *Petitpas v. Martin*, No. 3:17-cv-1912 (JAM), 2018 WL 5016997, at *5 (D. Conn. Oct. 15, 2018) (citing *Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012) ("Neither prisoners nor sex offenders are a suspect class.")).

Thus, the Court must find the alleged classification here constitutional so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 136-38 (2d Cir. 2013)

(quoting *Bryant v. N.Y. State Educ. Dep't,* 692 F.3d 202, 219 (2d Cir. 2012) (quoting *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993))) (holding "a reasonable public official in the position of [Commissioner of the Department of Corrections or Director of Temporary Release Programs] could reasonably have believed there was a rational basis for distinguishing between leaves of absence for the treatment of mental illness as opposed to other sorts of illness.").

Applying rational basis, the Second Circuit has held that statutes which "distinguish[] between individuals convicted of crimes characterized as sexual offenses and those convicted of other violent offenses" do not violate the Equal Protection Clause. *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999) ("The district court correctly found that the statute survives a rational basis analysis.").

Mr. Luther alleges that, "[w]hile DOC Administrative Directives and related manuals facially afford sex offender inmates equal or neutral community release eligibility," Compl. ¶ 20, the DOC treats sex offenders like himself differently from individuals who have committed other serious, violent felonies, such as murder and kidnapping, *id.* ¶ 25-30. Specifically, the Department of Correction allegedly routinely denies community release to applicants who are assigned a "Classification Sex Treatment Needs Score of 2 or greater, which indicates a history of one or more sexually related offenses." *Id.* ¶ 15. Mr. Luther claims that this difference in treatment violates the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶ 41(a-b).[2]

---

[2] Mr. Luther also alleges that he is a member of a class of incarcerated individuals who have been convicted of a sexual offense or sexual offenses committed when they were juveniles. To the extent that Mr. Luther argues that the Equal Protection Clause requires that juvenile sex offenders be treated differently from adult sex offenders, the Court rejects that argument because the Equal Protection Clause requires "all persons similarly situated should be treated alike," *Brown*, 673 F.3d at 151 (quoting *Diesel*, 232 F.3d at 103 (quoting *City of Cleburne, Tex.*, 473 U.S. at 439)), not the opposite.

Here, given Mr. Luther's multiple convictions for sexual assaults of minors, there may be a rational basis for denying him community release or for allegedly treating him differently from prisoners who have been convicted of non-sex offenses. Director Hunt's stated reasons for denying Mr. Luther community release allegedly were the "Nature and/or Circumstances of the Current Offense" and "Injury and/or Impact to the Victim(s) or the Victim's Family." Compl. at 44 (Ex. H, Community Release Program Cover Sheet, Conn. Dep't of Corr. (May 10, 2019)). But these statements do not sufficiently articulate a rational basis for denying Mr. Luther community release or for an alleged common practice of denying sex offenders community release.

Accordingly, Mr. Luther's Equal Protection claim will not be dismissed at this time. *See Petitpas*, 2018 WL 5016997, at *5 (in an initial review order, permitting an incarcerated plaintiff's equal protection claim to go forward because the court "d[id] not have sufficient information to decide if there are rational reasons that would conceivably justify treating [plaintiff] differently from other offenders who have been convicted of non-sex-related crimes (especially murder or robbery or other very serious crimes, to the extent that such offenders are actually treated more favorably)").

### E.  Claim under the United Nations Convention on the Rights of the Child

Mr. Luther also alleges a violation of his human rights under the United Nations Convention on the Rights of the Child because he was fifteen when he committed his offenses. Compl. ¶ 41(I) ("Children should be treated in a manner that promotes their sense of dignity, worth and reintegration into society." (quoting United Nations Convention on the Rights of the Child, Res. 44/25, Art. 40 (Nov. 20, 1989))).

But a treaty does not create enforceable rights unless it is self-executing or Congress has passed implementing legislation. *See Yuen Jin v. Mukasey*, 538 F.3d 143, 159-60 (2d Cir. 2008) (noting that "[i]t is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights," and even when treaties are self-executing, "there is a strong presumption against inferring individual rights" (internal citations omitted)). And the United States has not ratified this specific treaty. *See Roper v. Simmons*, 543 U.S. 551, 576 (2005) (noting that "every country in the world" except the United States has ratified "Article 37 of the United Nations Convention on the Rights of the Child"). Thus, it is not a treaty of the United States and creates no enforceable rights or binding obligations. *See Doe 1 v. Mich. Dep't of Corr.*, No. 13-14356, 2014 WL 2207136, at *8 (E.D. Mich. May 28, 2014) ("Similarly, because the United States has not ratified the [the United Nations Convention on the Rights of the Child], it also creates no independently enforceable rights for [p]laintiffs." (citations omitted)).

Accordingly, Mr. Luther's claims under the United Nations Convention on the Rights of the Child will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### F. Motion for an Emergency Hearing

Finally, Mr. Luther seeks an emergency hearing on his request to "to be reconsidered for Halfway house placement prior to the expiration of his sentence, the only window in which this relief could be granted." Mot. for Emerg. Hearing ¶ 3.

Preliminary injunctive relief, however, is an extraordinary remedy and is never granted as a matter of right. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Second Circuit applies similar standards for temporary restraining orders and preliminary injunctions,

13

"and district courts have assumed them to be the same." *See Foley v. State Elections Enf't Comm'n*, No. 3:10-cv-1091 (SRU) (D. Conn. July 16, 2010), 2010 WL 2836722, at *3 (quoting *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 107, 108 n.2 (D. Conn. 2005)).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *N.Y. Prog. and Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20); *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) ("In most cases, a party seeking to obtain a preliminary injunction must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly' in the movant's favor.") (quoting *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 779–80 (2d Cir. 1994)). "A plaintiff who seeks a preliminary injunction that will alter the status quo must demonstrate a 'substantial' likelihood of success on the merits." *Walsh*, 733 F.3d at 486 (2d Cir. 2013) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

"The district court has wide discretion in determining whether to grant a preliminary injunction," and a court of appeals will review that decision "only for abuse of discretion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam) (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 511 (2d Cir. 2005)). And "[a]lthough a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases." *Jarecke v. Hensley*, 552 F.

Supp. 2d 261, 264 (D. Conn. 2008) (citing *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997)); *see also Abrams*, 2018 WL 1469057, at *5 (determining that oral testimony and argument was not necessary to resolve a prisoner's motion for preliminary injunction requesting a change in prison conditions); *Anderson v. Williams*, No. 3:15-cv-1364 (VAB), 2016 WL 7217588, at *1 (D. Conn. Dec. 13, 2016) ("A district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when 'essential facts are not in dispute.'" (quoting *Md. Cas. Co.*, 107 F.3d at 984)).

A hearing is not necessary to resolve whether to issue a temporary restraining order or preliminary injunction and require that Mr. Luther be permitted to file a new application for community release.

There is not a substantial likelihood of success on the merits. All of Mr. Luther's claims, except for the one brought under the Equal Protection Clause, will be dismissed. Moreover, as suggested above, the decision not to dismiss the Equal Protection Clause claim now cannot reasonably be construed as an indication that this claim has a substantial likelihood of success on the merits. Indeed, because this claim is subject to only rational basis review, the claim may not succeed. *See Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999) ("Because [plaintiff] alleges a classification based on the nature of his offense, his challenge . . . is entitled to only 'rational basis' and not 'strict scrutiny' review." (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991) (applying rational basis test to a classification based on nature of offense))).

Mr. Luther also has failed to allege irreparable harm adequately, if he is not permitted to re-apply for community release. He asserts that, without "an Emergency Hearing to explore a remedy limited in scope to this time-sensitive matter," he "will suffer irreparable harm as this

specific opportunity for relief will dissipate and ultimately expire during this case's expected proceedings. An Emergency Hearing would simply bring all parties in this case together for a reasonable discussion on this matter." Mot. for Emerg. Hearing ¶ 16.

But to show irreparable harm, the injury must be "likely and imminent, not remote or speculative, and . . . not capable of being fully remedied by money damages." *Abrams v. Waters*, No. 3:17-cv-1659 (CSH), 2018 WL 1469057, at *4 (D. Conn. Mar. 26, 2018) (quoting *NAACP v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) ("A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." (citation and internal quotation marks omitted)).

Mr. Luther has not sufficiently alleged irreparable harm. Because Mr. Luther does not seek community release, but only to be given the opportunity to re-apply for community release, there is no irreparable harm. Even if the Court were to grant the relief Mr. Luther requests, the Defendants could again deny his application, leaving Mr. Luther in the same position as before.

Accordingly, Mr. Luther's motion for an emergency hearing is **DENIED**.

# ORDERS

The Court enters the following orders:

(1) The claims asserted on behalf of other inmates, the Fourteenth Amendment due process claims, the Eighth Amendment cruel and unusual punishment claim and the claim asserted under the United Nations Convention on the Rights of the Child are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Equal Protection claims under the Fourteenth Amendment for injunctive relief will proceed against the Defendants.

(2) By **February 7, 2020**, the Clerk of Court shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the Complaint and this ruling and order on Defendants Thomas Hunt, Rollin Cook, and David Maiga, by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3) By **February 7, 2020**, the Clerk of Court shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for each of the following Defendants: Thomas Hunt, Rollin Cook, and David Maiga.

(4) Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **April 10, 2020**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **July 10, 2020**. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed by **September 4, 2020**.

(7) Under Local Civil Rule 7(a), a non-moving party must respond to a dispositive motion within twenty-one (21) days of the date of the motion's filing. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) The **Clerk of Court** shall send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(9) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(10) If Plaintiff changes his address at any time during the litigation of this case, District of Connecticut Local Rule of Civil Procedure 83.1(c)2 provides that self-represented parties MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the Defendants or the attorney for the Defendants of his new address.

**SO ORDERED** at Bridgeport, Connecticut, on this 10th day of January, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge